1  Robert J. Lauson, Esq., CA Bar No. 175,486
   bob@lauson.com
2  LAUSON & TARVER LLP
   880 Apollo Street, Suite 301
3  El Segundo, California  90245
   Tel.   (310) 726-0892
4  Fax   (310) 726-0893

5  Attorneys for Defendants
   FUJIFILM North America Corporation
6  Roku, Inc., Vizio, Inc., and AVC Corporation

7

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**
                     **SOUTHERN DISTRICT**
11

| | |
|---|---|
| 12  **WINTERBORNE, INC.,** | **CASE NO.: SACV 12-00456 AG** |
| | **(RNBx)** |
| 13      **Plaintiff,** | |
| 14           **v.** | **Memorandum in Support of** |
| | **Defendants' Motion for Summary** |
| 15  **FUJIFILM NORTH AMERICA** | **Judgment** |
| **CORPORATION, a New York** | |
| 16  **corporation; ROKU, INC., a** | |
| **Delaware corporation and VIZIO,** | **Date:   June 29, 2015** |
| 17  **INC. a Washington corporation; and** | **Time:   10:00am** |
| **SVC Corporation, a California** | **Place:   10D (Santa Ana)** |
| 18  **corporation** | |
| | |
| 19      **Defendants.** | |
| 20 | **Hon. Andrew J. Gilford** |
| 21 | |
| _____ | |
| 22  *AND RELATED COUNTERCLAIMS* | |
| 23 | |

24

25  / / /

26

27  / / /

28

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     PATENT TRIAL AND APPEAL BOARD DECISION ...............................2

III.    LEGAL STANDARDS ...........................................................................4

   A.    Summary Judgment ........................................................................4

   B.    Obviousness Under 35 U.S.C. 103......................................................4

   C.    The Legal Standard for Proving Invalidity ......................................6

IV.    ARGUMENT........................................................................................6

   A.    It is Settled That Ritter and Loheed Patents are Prior Art to the Invention Claimed in the '746 Patent.......................................................................6

     1.  Ritter and Loheed Are Prior Art Under 35 U.S.C. § 102 ............................6

     2.  Ritter and Loheed Are Analogous Under Either Prong..............................7

   B.    Any Difference Between the Prior Art and the Claims are Insignificant. ..10

     1.  The Asserted Patent Claims .......................................................10

     2.  The Prior Art ..........................................................................11

   C.    The Asserted Claims are Merely Obvious Combinations of Known Prior Art Elements...............................................................................13

     1.  The Independent Claims of the '746 Patent are Invalid .............................13

     2.  The Dependent Claims of the '746 Patent are Invalid................................15

   D.    A Person of Ordinary Skill in the Art Would Have and Could Have Adapted the Crushed and Glued Edges Taught in Loheed for use in a Cardboard Display Pack...............................................................................15

   E.    Winterborne Cannot Establish the Required Nexus Between Secondary Considerations And The Claimed Invention ..........................................17

     1.  Winterborne's Commercial Success Evidence Fails To Prove That The Crushed Edge Feature Drives Sales And Represents A Substantial Share Of The Market..............................................................................18

2.  Winterborne is Unable to Prove AVC Copied Its Product.........................20

3.  The Ritter Patent And Others Satisfied the Long Felt Need Before Winterborne's Product. .....................................................................22

4.  Winterborne's Professional Approval Evidence Lacks Any Connection To The Crushed Edges Improvement...............................................................23

F.    Defendants Should be Awarded Reasonable Attorney's Fees...................24

TABLE OF AUTHORITIES

**Cases**

*Akamai Technologies, Inc. v. Cable & Wireless Internet Services, Inc.*, 344 F.3d 1186 (Fed. Cir. 2003)........................................................................24

*Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308 (Fed. Cir. 1999)............................17

*Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350 (Fed. Cir. 1984)............7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...........................................4

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281 (Fed. Cir. 1985)..............................................................................................................19

*Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012) ...................5

*Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984 (Fed.Cir.2009) ....................................................................................................14

*Cable Elect. Prods. Inc. v. Genmark, Inc.*, 770 F.2d 1015 (Fed. Cir. 1985)...........22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................................4

*Cross Med. Prods. Inc. v. Medtronics Sofamor Danek Inc.*, 76 USPQ2d 1662 (Fed. Cir. 2005) .......................................................................................................16

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387(Fed. Cir.), cert. denied, 488 U.S. 956 (1988) .........................................................................19

*Ecolochem Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361 (Fed. Cir. 2000).................24

*Fogerty v. Fantasy, Inc.* 510 U.S. 517 (1994) .....................................................27

*Graham v. John Deere Co.*, 383 U.S. 1 (1966) .................................................5, 11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)..........................................................29

*Howes v. Med. Components, Inc.*, 761 F. Supp. 1193 (E.D. Pa. 1990)..................28

*In re Baxter Travenol Labs*, 952 F.2d 388 (Fed. Cir. 1991).................................21

*In re Clay*, 966 F.2d 656 (Fed. Cir. 1992) .............................................................9

*In re Gershon*, 372 F.2d 535 (CCPA 1967)..........................................................25

*In re GPAC*, 57 F.3d 1573 (Fed. Cir. 1995) .........................................................17

*In re Huai-Hung Kao*, 639 F.3d 1057 (Fed. Cir. 2011)...........................................19

*In re Huang*, 100 F.3d 135 (Fed. Cir. 1996) .........................................................21

*In re Icon Health & Fitness, Inc.*, No. 06-1573 (Fed. Cir. Aug. 1, 2007)..............18

*In re Kubin*, 561 F.3d 1351 (Fed. Cir. 2009) ...........................................................5

*In re Myers*, 410 F.2d 420 (CCPA 1969) ..............................................................15

*In re Paulsen*, 30 F.3d 1475 (Fed. Cir. 1994) ......................................................19

*In re Wiseman*, 596 F.2d 1019 (CCPA 1979)........................................................11

*Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317 (Fed. Cir. 2004)...........23

*Karsten Manufacturing Corp. v. Cleveland Golf Co.*, 242 F.3d 1376 (Fed. Cir.
   2001)....................................................................................................................6

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007)................................... 5, 6, 14, 16

*Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056 (Fed. Cir. 1983) ......................29

*Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988)...................................................29

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574
   (1986) ..................................................................................................................4

*Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005) ..............19

*Microsoft Corp. v. i4i Limited Partnership*, 131 S. Ct. 2238 (2011) .......................6

*Minco, Inc. v. Combustion Eng'g, Inc.*, 903 F. Supp. 1204 (E.D. Tenn. 1995) ......28

*Minton v. National Association of Securities Dealers, Inc.*, 336 F.3d 1373 (Fed.
   Cir. 2003) ..........................................................................................................26

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008)............ 26, 27

*Newell Co. v. Kenney Mfg. Co.*, 864 F.2d 757 (Fed. Cir. 1988)............................25

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.* 572 U.S. 1 (2014).................27

*Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299 (Fed. Cir. 2006)..............22

*PPG Indus., Inc. v. Celanese Polymer Specialties Co., Inc.*, 840 F.2d 1565 (Fed.
   Cir. 1988) ..........................................................................................................28

*Pro-Mold & Tool Co. v. Great Lakes Plastics Inc.*, 37 USPQ2d 1626 (Fed. Cir. 1996)..................................................................................................16

*Stevenson v. International Trade Comm.*, 612 F.2d 546 (CCPA 1979) ...................9

*Syntex (USA) LLC v. Apotext Inc.*, 74 USPQ2d 1823 (Fed. Cir. 2005)...................16

*Vulcan Engineering Co., Inc. v. Fata Aluminum, Inc.*, 278 F.3d 1366 (Fed. Cir. 2002)......................................................................................................26

*Wyers v. Master Lock Co.*, 616 F.3d 1231 (Fed. Cir. 2010)...................................23

**Statutes**

35 U.S.C. § 102(b) ..............................................................................7, 8

35 U.S.C. § 102(e) ..............................................................................7, 8

35 U.S.C. § 103(a) ..............................................................................5, 17

35 U.S.C. § 285 .............................................................................. 27, 28, 29

*Fed. R. Civ. P.* 56(c)..............................................................................4

# I.    INTRODUCTION

The 8,205,746 patent-in-suit is the last remaining member of an invalidated family.  Each patent in the family claims a corrugated cardboard display pack with a crushed peripheral area. The '746 patent is a continuation of the now invalid 7,726,480 patent-in-suit, which means they share the same specification and drawings. The independent claims of the '746 patent substantially overlap the scope of invalidated Claim 1 of the '480 patent. The primary novel feature of this patent family is the crushed peripheral edge, which was found to be obvious in light of the prior art in the *inter partes* reexaminations of the '480 Patent and the related 8,205,747 patent in-suit.

There was no request made to reexamine the '746 Patent. This is because at the time Defendants believed there were few if any sales of products possibly reading on that patent, although Plaintiff alleged it found a few units in a Costco store after the patent issued in 2012. The *inter partes* reexamination procedure used to invalidate the '480 and '747 patents no longer exists, and now more than a year has passed since this action was filed and Defendants counterclaimed for a declaratory judgment of invalidity, such that the new *inter partes* review procedure is unavailable. Hence, Defendants must burden this Court with invalidating the remaining patent. The claims of the '746 Patent are obvious variations of the invalidated '480 and '747 patents, and are invalid in light of the prior art under similar grounds.

Here the burden of proving invalidity by clear and convincing evidence is easier compared to other cases. The presumption that the Patent Office did its job is weakened when a challenger presents prior art that was not evaluated by the examiner during the examination. The Loheed patent prior art was not before the examiner during the examination. The prior art Ritter patent was disclosed to the examiner but not given substantive attention.  However, both the Loheed patent and the Ritter patent were thoroughly analyzed during *reexamination*, and it was

1

1  found that a person of ordinary skill in the art would have been motivated to
2  modify Ritter's display package with Loheed's crushed edge teachings, thereby
3  rendering those patents invalid.

4      The '746 Patent is ripe for summary adjudication. The patent examiners who
5  examined the '480 and '747 Patents also examined the '746 Patent, and they
6  lacked all the necessary facts to reject patentability, but the Patent Office was able
7  to correct these oversights through reexamination of the '480 and '747 patents.
8  The claims of the remaining '746 patent are strikingly similar to the '480 patent
9  claims, and recite no new novel features. There are no genuine issues of material
10 fact. Winterborne admitted that the Ritter Patent discloses all the claimed features,
11 except crushing the peripheral area. Winterborne admitted that Loheed teaches
12 crushing an edge of a corrugated cardboard package. The underlying facts for the
13 obviousness inquiry were all settled during reexamination.

14     The critical prior art missing during the examination of the '746 patent
15 invalidated the closely related '480 and '747 patents. Although each patent stands
16 on its own, the facts on which this remaining patent stands were severely
17 weakened. The '746 patent should share the same fate as its invalidated family. It
18 is important to the Defendants that the final patent is invalidated, such that
19 Plaintiff is no longer able to use any of the wrongly-issued patents to improperly
20 suppress competition in the marketplace.

21

22 **II.    PATENT TRIAL AND APPEAL BOARD DECISION**

23     The Patent Office found the '480 and '747 patents invalid over the prior art.
24 See *Inter Partes* Reexam. Certs. (Lauson Decl., Exs. C, M). All claims, 1-14 of
25 the '480 Patent were rejected by the Examiner in reexamination. All claims, 1-20
26 of the '747 Patent were likewise rejected by the Examiner in reexamination. The
27 Patent Trial and Appeal Board (PTAB) affirmed the Examiner's decision rejecting
28 all claims of both patents. Decision on appeal (Lauson Decl., Exs. D, O)

Winterborne failed to timely appeal the PTAB decision to the Federal Circuit.

In the Decision on Appeal, Judge McCarthy acknowledged that the Examiner, the Patent Owner and the Requester all agree that the Ritter Patent teaches all of the limitations of claim 1, except the crushed peripheral area. *Decision on Appeal*, at 4-5. The sole issue decided in the appeal was whether one of ordinary skill in the art would have had reason to modify Ritter's display pack to satisfy the crushed peripheral edge limitation. *Id.* at ¶5.

In the Findings of Fact section of the Decision on Appeal, Judge McCarthy found that Ritter teaches "enhancing security of a display pack 12 against theft by joining the front and back cards…by means of a heat-seal coating placed on the inside facing surfaces of the front and back cards." *Id.* at ¶1. Ritter also teaches the sparing use of the coating "primarily only around the common peripheral regions of the respective front and rear cards." *Id.* Judge McCarthy found that Loheed teaches a technique for fabricating a box from a corrugated cardboard blank, that includes coating the blank with hot-melt adhesive, crushing the ends of the blank, folding the blank over and sealing the overlapping ends with heat and pressure. *Id.* at ¶¶2-5. Loheed further teaches moving the upper portions of the box together to form a fin that is squeezed together between heating and pressure bars. *Id.* at ¶6. "Loheed recognizes that the 'selective application of adhesive to the corrugated layer during manufacture of the corrugated board will evidence savings in the amount of adhesive employed.'" *Id.* at ¶7.

In the Analysis section of the Decision on Appeal, Judge McCarthy agreed with the Examiner that is would have been obvious "to crush the Ritter adhesive area to enhance strength," since Ritter teaches enhancing the security of display packs. *Id.* at ¶8. "This teaching would have provided one of ordinary skill in the art reason to seek means for creating a strong, theft-resistant bond between the front and back cards." *Id.* Loheed teaches crushing an edge of a corrugated cardboard blank, and forming a fin or flange by squeezing two ends together, with

3

1  hot-melt adhesive between, under heat and pressure. *Id.* Loheed's teachings would
2  have provided one of ordinary skill in the art a reasonable expectation that
3  crushing and heat sealing the edges together "would succeed in yielding strong
4  and tenacious joints between the front and back cards" *Id.* at ¶9. "These teachings
5  provide a rational underpinning for the Examiner's conclusion that it would have
6  been obvious to modify Ritter's display package my crushing a portion" to satisfy
7  the crushed peripheral edge limitation of claim 1. *Id.*

8
9  **III.   LEGAL STANDARDS**
10       **A.     Summary Judgment**
11       Summary judgment is appropriate when no genuine issue of material fact
12  exists and the moving party is entitled to judgment as a matter of law. *See Fed. R.*
13  *Civ. P.* 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, (1986). To defeat a
14  motion for summary judgment, the opposing party "must do more than simply
15  show that there is some metaphysical doubt as to the material facts." *Matsushita*
16  *Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, (1986).
17  In other words, the party opposing summary judgment must set forth "genuine
18  factual issues that properly can be resolved by a finder of fact because they may
19  reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*,
20  477 U.S. 242, 250, (1986).
21       **B.     Obviousness Under 35 U.S.C. 103**
22       A patent is invalid for obviousness "if the differences between the subject
23  matter sought to be patented and the prior art are such that the subject matter as a
24  whole would have been obvious at the time the invention was made to a person
25  having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. §
26  103(a); *See also*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). "In
27  determining whether the subject matter of the patent is obvious, neither the
28  particular motivation nor the avowed purpose of the patentee controls. What

matters is the objective reach of the claim." *KSR*, at 419.

"The ultimate judgment of obviousness is a legal determination." *Id.*, at 427. "Obviousness is a question of law based on underlying findings of fact." *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009). The underlying factual inquiries (also known as the *Graham* Factors) are: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others. *See KSR*, at 406 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)); *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1332 (Fed. Cir. 2012).

Against this factual backdrop, the question central to the obviousness inquiry is whether "there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR*, at 419-20. In *KSR*, the Supreme Court reiterated that the answer to this question requires "an expansive and flexible approach." *Id.* at 415.

"The issue of obviousness may be decided on motion for summary judgment when the underlying facts are not in dispute, or when the movant must prevail even if disputed facts and inferences therefrom are resolved in favor of the non-movant. ... In this case there is no dispute as to the scope and content of the prior art, the differences between the patented invention and the prior art, or the state of ordinary skill in the field of the invention. We thus review whether the judgment of invalidity is correct, as a matter of applying the law to the undisputed facts." *Karsten Manufacturing Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1384-85 (Fed. Cir. 2001). Therefore, the issue of obviousness is amenable to summary judgment when the underlying facts are not in dispute, even when the conclusions to be drawn from them may be hotly disputed.

## C.   The Legal Standard for Proving Invalidity

Invalidity must be proven by clear and convincing evidence. However, the Supreme Court has observed that if a material reference was not before the USPTO during prosecution the standard may be easier to meet. *See Microsoft Corp. v. i4i Limited Partnership*, 131 S. Ct. 2238 (2011). "Simply put, if the PTO did not have all material facts before it, it's considered judgment may lose significant force. And, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain." *Id.* at 2251. Thus, an added burden of deference to the PTO is not required, with respect to invalidity arguments based on evidence that the PTO did not consider. *See Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1360 (Fed. Cir. 1984).

## IV.   ARGUMENT

### A.   It is Settled That Ritter and Loheed Patents are Prior Art to the Invention Claimed in the '746 Patent

The first underlying factual inquiry is to determine the scope and content of the prior art. In other words, it must be determined that the references actually qualify as prior art, that the references are analogous art to the claimed invention. *See In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004).

#### 1.  Ritter and Loheed Are Prior Art Under 35 U.S.C. § 102

"A person shall be entitled to a patent *unless* (b) the invention was patented or described in a printed publication in this or *a foreign country … more than one year prior* to the date of the application for patent in the United States, *or* (e) a patent granted on an application for patent by another *filed in the United States before the invention* by the applicant for patent." 35 U.S.C. § 102(b) and (e) (emphasis added).

The earliest priority date of the '746 patent (Lauson Decl., Ex. A.) is August

24, 2005 (with the filing of Provisional Application for Patent No. 60/711,024). The Ritter Patent (Lauson Decl., Ex. E) has a priority date of July 23, 2004, which is more than one year prior to the '746 priority date, thus qualifying as potential prior art under 35 U.S.C. § 102(e). The Loheed Patent (Lauson Decl., Ex. F) has a filing date of August 10, 1967 and a foreign publication date of February 12, 1969, decades before the '746 Patent, thus qualifying as potential prior art under 35 U.S.C. § 102(b).  Thus, both the Ritter and Loheed Patents predate the earliest possible priority date of the '746, with no possibility of being antedated.

### 2.  Ritter and Loheed Are Analogous Under Either Prong

A reference is analogous art to the claimed invention if: (1) the reference is from the same field of endeavor as the claimed invention (even if it addresses a different problem); *or* (2) the reference is reasonably pertinent to the problem faced by the inventor (even if it is not in the same field of endeavor as the claimed invention). *See Bigio*, at 1325.  The Loheed and Ritter patents are analogous under either prong of the test.

During the *inter partes* reexamination of the '480 and '747 patents, Winterborne admitted that "Ritter is analogous prior art and discloses all of the elements of Claim 1 of the '480 patent except for crushing of peripheral edge portions." *'480 Reexamination - Patent Owner's Response* of 06/14/13 at pg. 10 (Lauson Decl., Ex. H). Due to the substantial overlap in independent claim language and scope, Winterborne's admission that Ritter is prior art applies equally to the '746 Patent.

### a.  Ritter and Loheed Both Are From the Same Field of Endeavor as the Claimed Invention.

Even without this substantial claim language similarity, the Ritter patent satisfies the "same field of endeavor" prong of the analogous art test.  The Ritter abstract discloses "[d]isplay packaging constructions incorporating a plastic blister cavity, sandwiched between layers of paperboard material, preferably corrugated

1   paperboard material ...” Thus, Ritter and the invention of the '746 Patent are both
2   directed to the field of glued corrugated cardboard packaging.

3        Loheed Patent is analogous art to the '746 invention under the first prong,
4   since it is directed to the field of glued corrugated cardboard packaging. The
5   Examiner in the '480 reexamination determined that Loheed was analogous art,
6   stating, the Loheed disclosure is “related to a glued corrugated cardboard sheet.”
7   *Action Closing Prosecution* at pg. 7 (Lauson Decl., Ex. N). Loheed describes “a
8   container constructed of corrugated [cardboard], such as is generally employed for
9   corrugated [cardboard] carton,” which is then folded over to bond the opposing
10  edges with glue. Loheed, at pg. 3, lns. 5-8 and pg. 7, lns. 54-59 (Lauson Decl., Ex
11  F).  Thus, the Loheed Patent and the invention claimed in the '746 Patent are both
12  in the field of packaging utilizing glued corrugated cardboard sheets.

13              **b.  Loheed is Also Reasonably Pertinent to the Problems**
14                     **Faced by the Inventor of the '480 Patent.**

15        Even if a prior art reference is found to be from a different field of endeavor,
16  the reference is still be analogous to the invention if it is “reasonably pertinent to
17  the problem faced by the inventor,” under the second prong. “In a simple
18  mechanical invention a broad spectrum of prior art must be explored and it is
19  reasonable to permit inquiry into other areas where one of ordinary skill in the art
20  would be aware that similar problems exist.” *Stevenson v. International Trade
21  Comm.*, 612 F.2d 546, 550 (CCPA 1979) (emphasis added). The '746 display
22  pack is a prime example of a “simple mechanical invention.”

23        In addition to being in the same field of endeavor, the Loheed Patent is
24  reasonably pertinent to the problem faced by the inventor. “A reference is
25  reasonably pertinent if, even though it may be in a different field from that of the
26  inventor's endeavor, it is one which, because of the matter with which it deals,
27  logically would have commended itself to an inventor's attention in considering
28  his problem.” *In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992).

The problem faced by the '480 Inventor was gluing overlaying sheets of corrugated cardboard together by application of heat through the corrugations to cure the heat sensitive glue in between. The '746 Patent describes the problem to be solved:

> Heat sensitive adhesives have not been used in the first type of packaging because corrugated cardboard sheets are poor heat conductors, and heat applied to the outer side of the cardboard cannot easily reach the area between the two cardboard sheets where the heat adhesive material would be applied.

'746 Patent, col. 1, lns. 62-67. (Lauson Decl., Ex. A)

The '746 Patent goes on to describe the solution to this problem:

> Because the corrugations inside the cardboard are crushed and the air gaps are substantially eliminated, the crushed cardboard becomes a better heat conductor. Sufficient heat can be conducted from the outer side to the inner side where the heat-sensitive adhesive has been applied to activate the adhesive and seal the package.

'746 Patent, col. 4, lns. 36-41.

Loheed describes this very same solution of crushing the corrugations for improved heat transfer. A person of ordinary skill in the art reading Loheed would understand that the problem of gluing two corrugated cardboard sheets using heat sensitive glue could be solved by crushing the cardboard to permit activation of the glue by heat and pressure. Loheed states:

> The bonding of the *crushed layers* in the solid fibre board areas together with the surface coating of *hot melt adhesive* **permits** *overlapping portions* of such solid board to be **bonded together by the application of heat and pressure**.

Loheed Patent, pg. 4, lns. 54-59 (emphasis added) (Lauson Decl., Ex. F).

A person of ordinary skill would understand that crushing of the cardboard *permits* gluing by heat and pressure. This shows an inherent understanding of the problem of heat conduction through the corrugations of cardboard.

"[T]he solution is obvious from prior art which contains the same solution

1   for a similar problem." *In re Wiseman*, 596 F.2d 1019, 1022 (CCPA 1979).  Even

2   though Loheed describes a corrugated cardboard carton for holding liquids and

3   discusses that the benefit of crushing the edges include moisture-proofing, Loheed

4   still experienced the same problem of activating heat sensitive glue through the

5   corrugations of the cardboard.  <u>This problem is inherent to all corrugated</u>

6   <u>cardboard packages</u>.

7          Loheed solved this problem by crushing the cardboard so that the glue can

8   be activated by heat and pressure.  Further, Loheed describes that this sealing

9   technique can be used in a wide variety of applications beyond containing liquids.

10  *See* Loheed, pg. 6, lns. 78-86. Winterborne admitted that Loheed teaches: …

11  crushing the edges of a corrugated [cardboard] sheet" and "reducing the thickness

12  of the edges of a corrugated fiber sheet so that when the sheet is folded into a

13  carton shape … opposite edges overlap and are glued together.." '480 Reexam. -

14  Patent Owner's Resp. of 06/14/13, pg. 7 (Lauson Decl., Ex. I).

15          **B.      Any Difference Between the Prior Art and the Claims are**

16                  **Insignificant.**

17          The second basic factual inquiries underlying obviousness is to ascertain the

18  differences between the prior art and the claims at issue. *See Graham* at 17.

19                  **1.  The Asserted Patent Claims**

20          Winterborne has asserted claims 1-38 of the '746 Patent against Defendants

21  in this case. The claims of the '746 Patent are directed to a display pack allowing a

22  product to be seen in a clear plastic container sandwiched between two planar

23  cardboard sheets.  Generally, the claims recite first (11) and second (12)

24  overlaying corrugated cardboard sheets, each having upper and lower facings on

25  each side of a corrugated member.  At least one of the cardboard sheets defines an

26  opening, and a container (13) having a flat insertion portion (13a) and a chamber

27  portion (13b) for holding a product protrudes from the opening.  In this manner,

28  the flat insertion portion (13a) is sandwiched between the two cardboard sheets

(11, 12) while the chamber portion (13b) extends out of plane.

Additionally claimed, is at least one peripheral area (11a, 12a) of the overlaying cardboard sheets (11, 12) extending inwardly from their peripheral edges.  The peripheral area (11a, 12a) of the cardboard sheets (11, 12), termed an "inner area," lies between the peripheral area (11a, 12a) and the opening where the chamber portion (13b) extends out of plane.  An adhesive (14) adheres the cardboard sheets (11, 12) together in the peripheral area (11a, 12a), and while the corrugated cardboard in the inner area has substantially its original thickness, the peripheral area (11a, 12a) is crushed to a reduced thickness or is crushed such that the air gaps of the corrugations are substantially eliminated.

The inventor of the '746 Patent, Mr. Nazari, admitted that the primary improvement the '746 invention made to standard corrugated cardboard display packs was to crush one or more edge portions. *See* Declaration of Joseph Nazari ("Nazari Decl."), at 13 (Lauson Decl., Ex. G). Further, Winterborne noted that all the limitations of the '480 Patent Claim 1 were disclosed by Ritter, except for crushing of the peripheral portions. *See* '480 Reexam. - Patent Owner's Resp. of 12/26/12, pg. 10 (Lauson Decl., Ex. H). As discussed, the independent '746 claims substantially overlap the scope of the invalidated '480 claims with no inventive difference.

Although the validity of the claims of the '746 Patent must be analyzed separately from the invalidated claims of the '480 Patent, the above statement regarding Ritter's teaching all the elements of the claims, except crushing, applies equally to the independent claims of the '746 Patent, considering the substantial overlap in exact claim language and claim elements.

## 2.  The Prior Art

### a.  Corrugated Cardboard Display Packs with a Glued Peripheral Area Existed in the Prior Art.

Winterborne admits that Ritter describes each and every limitation of the

'746 claims, except crushing the peripheral edge.  Winterborne stated "[t]he Ritter reference (Figs. 1-3) discloses a display pack 12 comprising: a first cardboard sheet 16 including facings and an inner corrugated member (cols. 8-9, lns. 64-8), and an opening 18; a second cardboard sheet 24 including facings and an inner corrugated member (cols. 8-9, lns. 64-8); a clear plastic (col. 3, lns.14-16, 32-33) container including a flat insertion portion 22 and a chamber portion; and a heat sensitive adhesive (col. 9, lns 21-30; col. 12, lns. 29-47). … Ritter further discloses the use of adhesive 'around the common peripheral regions of the respective front and rear cards.' (Ritter, col. 12, lns. 36-37) and notes that '[s]uch adhesive application also typically exists in prior art sandwiched card-blister flange card constructions'" (Ritter, col. 12, lns. 38-39). '480 Reexam. - Patent Owner's Appeal Brief of 11/07/13 pgs. 7-8 (Lauson Decl., Ex. J).

### b.  Cardboard Packaging With Crushed and Glued Edges Also Existed in the Prior Art.

Winterborne admitted that Loheed teaches a cardboard package with crushed edges that are overlapped and glued. "Patent Owner agrees that Loheed teaches: …crushing the edges of a corrugated [cardboard] sheet" and "reducing the thickness of the edges of a corrugated [cardboard] sheet so that when the sheet is folded into a carton shape…opposite edges overlap and are glued together.." '480 Reexam. - Patent Owner's Resp. of 06/14/13, pg. 7 (Lauson Decl., Ex. I). Further, Winterborne states that "Loheed's invention includes sealing the edges of a corrugated cardboard carton blank, by crushing the edge areas after applying a sufficient amount of adhesive to the edge areas of the corrugated member of the fibre board so that when crushed, the edge areas become the equivalent of solid fibre board…" '480 Reexam. Patent Owner's Appeal Brief 11/07/13, pg. 8 (Lauson Decl., Ex. J).

**C.     The Asserted Claims are Merely Obvious Combinations of Known Prior Art Elements.**

Where all of the limitations of the patent were present in the prior art references, and the invention was addressed to a known problem, the claims are obvious. *Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 993 (Fed.Cir.2009).  The Supreme Court in *KSR* explained that: "… when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." *KSR*, at 421.

The following is a comparison of the asserted patent claims against the prior art patents which demonstrates that (a) every element in these claims are known in the prior art, (b) these elements are combined according to known prior art techniques to perform the same respective functions as their prior art counterparts and (c) the claimed combinations of these elements yield no more than predictable results.  As such, the asserted claims must be held to be obvious.

**1.  The Independent Claims of the '746 Patent are Invalid**

Claims 1, 14 and 21 substantially overlap in claim language and scope, sharing similar language regarding the overlaying cardboard sheets, the container protruding from an opening in one cardboard sheet, the adhesive between the sheets in at least one peripheral area.  Claim 1 additionally recites, in pertinent part, a crushed peripheral area where the air gaps are substantially eliminated. Claim 14 additionally recites, in pertinent part, a peripheral area, defined by an outer peripheral edge and an inner boundary.  Claim 14 further recites that the peripheral area is crushed to less than the original thickness to form depressed area on at least one surface.  Claim 21 additionally recites, in pertinent part, that the both faces of the peripheral area are crushed more than approximately 50% of

13

1  the original thickness.

2      Due to the substantial overlap in the language and scope between the

3  independent claims, the limitations of Claim 1 will be analyzed, with further

4  analysis of limitations from Claims 14 and 21 which differ from Claim 1,

5  especially the differences of the last limitation, which describes the degree of

6  crushing the peripheral area, from a slight reduction in thickness to completely

7  crushing the air gap. The language of Claim 1 is reproduced in the attached Claim

8  Chart (McGushion Decl., Ex. A.), with each limitation identified in the prior art in

9  the right column. Longer clauses have been divided at commas to clarify the

10  analysis. Further, the inventive differences in Claims 14 and 21 are addressed in

11  the analysis of Claim 1 in the Claim Chart.

12      To summarize the analysis of Claim 1, Ritter teaches all the limitations,

13  except crushing the peripheral area. Loheed teaches a cardboard package where

14  the edge portion is crushed and glued. "Patent specifications are written for those

15  skilled in the art and, therefore, need not teach or point out in detail that which is

16  well-known in the art." *In re Myers*, 410 F.2d 420, 424 (CCPA 1969). Loheed

17  inherently describes the problem of heat conduction, as it is a well-known and

18  common-sense based principle that heat travels through a thin material easier than

19  through a similar thicker material (much like a thin down jacket versus a thick

20  down jacket). By crushing the edges, Loheed was able to solve this problem *and*

21  make the bond water resistant *and* create an aesthetically pleasing package.

22  Loheed describes "[t]he bonding of the crushed layers in the solid fibre board

23  areas together with the surface coating of hot melt adhesive *permits* overlapping

24  portions of such solid board to be bonded together by the application of heat and

25  pressure." Loheed pg. 4, lns. 54-59 (emphasis added).

26      Even though Loheed is primarily concerned about crushing to moisture-

27  proof the cardboard, a person of ordinary skill "need not see the identical problem

28  addressed in a prior art reference to be motivated to apply its teachings." *Cross*

14

*Med. Prods. Inc. v. Medtronics Sofamor Danek Inc.*, 76 USPQ2d 1662, 1684–85 (Fed. Cir. 2005).  Further, "[t]he obviousness analysis cannot be confined by . . . the explicit content of issued patents." *KSR* at 419.  "What a reference teaches a [person of ordinary skill in the art] is not limited to what a reference specifically 'talks about' or what is specifically 'mentioned' or 'written' in the reference." *Syntex (USA) LLC v. Apotext Inc.*, 74 USPQ2d 1823, 1829-30 (Fed. Cir. 2005).

Loheed's teachings can be used in any application where a strong bond between sheets of corrugated cardboard is desired. A person of ordinary skill in the art at the time of the invention would have added the crushed edges taught in Loheed to the corrugated cardboard display package taught in Ritter, since it is a general desire and goal to improve the bonding between cardboard sheets (An inventor "strives to improve that which already exists." *Pro-Mold & Tool Co. v. Great Lakes Plastics Inc.*, 37 USPQ2d 1626, 1630 (Fed. Cir. 1996)) and Loheed teaches that heat sensitive or hot-melt glue can be activated by an external heat source if the corrugations are crushed, creating a better bond.

### 2.  The Dependent Claims of the '746 Patent are Invalid

Each dependent claim adds at least one further limitation to the claim from which it depends.  Each limitation of each dependent claim can be found in the combined teachings of Ritter and Loheed. Dependent claims with like limitations have been combined in the analysis of the attached Claim Chart (McGushion Decl., Ex. A.). As can be seen in Claim Charts, Ritter in view of Loheed teach each and every limitation of the dependent claims of the '746 Patent. Thus, each dependent claim 2-13, 15-20, and 22-38 are invalid over the prior art.

### D.    A Person of Ordinary Skill in the Art Would Have and Could Have Adapted the Crushed and Glued Edges Taught in Loheed for use in a Cardboard Display Pack.

Determination of the level of "ordinary skill" is an underlying factual inquiry. *See Graham*, at 17.  It is the "prism or lens through which a judge or jury

views the prior art and the claimed invention." *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1324 (Fed. Cir. 1999).  The person of ordinary skill in the art is a hypothetical person who is presumed to have known the relevant art at the time of the invention. *In re GPAC*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). A claim that would have been obvious to a "person having ordinary skill in the art" is not patentable. 35 U.S.C. § 103(a).

Winterborne admitted that "[t]he level of skill of a person of ordinary skill in the art of product display packs is 'a person having knowledge of the techniques used to manufacture product display packs.  Such knowledge would be gained by virtue of *three to five years of experience* in the manufacture of display packs.'" Nazari Decl. ¶ 35 (emphasis added) (Lauson Decl., Ex. G).

A person of ordinary skill in the art will have worked with corrugated cardboard packaging on a daily basis for three to five years.  This hypothetical person would have encountered many problems and applied many solutions in those years.  The problem of gluing two sheets of corrugated cardboard together is well known and would most certainly be encountered on a frequent basis.

A person of ordinary skill and creativity would observe that others, like Loheed, have crushed the cardboard corrugations to reduce its insulating qualities in order to cure the adhesive by applying heat to the outside surface of the sheets. This person would also recognize that this crushing technique could be used in any glued corrugated cardboard application, including corrugated cardboard display packages. It does not matter that Loheed used more adhesive than might be used in a display package for water-proofing.  It is well within the abilities person of ordinary skill in the art to modify the teachings of Loheed by adjusting the amount of glue according to the requirements of the application. *In re Icon Health & Fitness, Inc.*, No. 06-1573 (Fed. Cir. Aug. 1, 2007).

**E.**     **Winterborne Cannot Establish the Required Nexus Between Secondary Considerations And The Claimed Invention**

The fourth and final underlying factual inquiry under the *Graham v. Deere* obviousness analysis is the consideration of secondary evidence. This includes evidence of the invention's commercial success due to the merits of the claimed invention (rather than marketing, dominant market position, etc.), satisfying a long felt but unsolved need, the failure of others where the invention succeeds, licensing, copying of the claimed invention, as well as other categories of evidence. The evidence is only relevant to obviousness if there is a connection, or *nexus*, between them and the invention covered by the patent claims. *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42 (Fed. Cir. 1985), cert. denied, 475 U.S. 1017 (1986). The burden of showing this nexus lies with the patent owner. *In re Paulsen*, 30 F.3d 1475, 1482 (Fed. Cir. 1994).

The term "nexus" designates a factually and legally sufficient connection between the objective evidence of nonobviousness and the claimed invention so that the evidence is of probative value in the determination of nonobviousness. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387 (Fed. Cir.), cert. denied, 488 U.S. 956 (1988). This means there must be a causal relationship between the evidence and the claimed invention. *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1376 (Fed. Cir. 2005). Objective evidence of secondary considerations may be entitled to *more or less weight*, depending upon its nature and its relationship, or nexus, to the merits of the claimed invention. *Ashland Oil*, at *Id.* "Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011). Furthermore, "[a] strong case of prima facie obviousness…cannot be overcome by a far weaker showing of objective indicia of nonobviousness." *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1371 (Fed.

17

Cir. 2011).

The secondary evidence introduced by Winterborne during reexamination cannot overcome the strong showing of *prima facie* obviousness. First, Winterborne's commercial success arguments and evidence are unpersuasive and lack any of the required real proof that the claimed improvement of crushing the edges is the cause of substantial commercial success. Second, Winterborne provided essentially zero information as to the long felt need, that is, how long the need persisted, and the efforts made by others to solve the problem. Third, Winterborne only provided opinion evidence that competing products copied the claimed invention, with no detailed photographs or measurements to support this assertion. Finally, Winterborne submitted evidence of awards as evidence of professional approval, yet none of the awards or articles reference the claimed crushed edge feature, focusing instead on the corrugated cardboard features already taught in the prior art.

1.   **Winterborne's Commercial Success Evidence Fails To Prove That The Crushed Edge Feature Drives Sales And Represents A Substantial Share Of The Market.**

In the reexamination of the '480 and '747 Patents, Winterborne stated that the patentable improvement was "crushing one or more edge portions of the two sheet construction." Nazari Decl., ¶ 13 (Lauson Decl., Ex. G).  Winterborne stated the patented packaging was first sold in 2005, and that in the first three years it generated over $20 million in revenue. *Id*., ¶ 17. Winterborne presented a chart showing how it transitioned completely to the patented package from a standard plastic blister packaging ("ClamShell") over the course of several years. *Id.*, ¶ 20. The chart further describes that the quantity of plastic used over that transition period decreased by about 63% (from 19¢ to 7¢). *Id.*  Winterborne stated its customers included Samsung, Sony, Toshiba, Motorola and Bose. *Id.*, ¶ 21. Winterborne stated it has three licensees, bringing in about $1.9 million. *Id.*, ¶ 23,

24.  Winterborne also indicated it sold on the order of 1.5 million units to each of Sam's Club and Costco. *Id.*, ¶ 22. Winterborne also claims that there has been a steep rise in the sale of corrugated cardboard display packages with crushed edges since 2005. *Id.*, ¶ 29.

Winterborne provides many figures, such as revenues, licenses, number of units sold, and reduction in plastic used. But, Winterborne fails to provide the required causal connection or nexus between these figures and the unique features claimed in the patent *and* not already taught by the Ritter Patent, specifically the crushed peripheral edge. To establish this nexus, Winterborne must offer "proof that the sales [of the allegedly successful product] were a direct result of the unique characteristics of the claimed invention—as opposed to other economic and commercial factors unrelated to the quality of the patented subject matter." *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996).

First, the number of units sold in itself "is insufficient to establish commercial success." *In re Baxter Travenol Labs*, 952 F.2d 388, 392 (Fed. Cir. 1991). The proper analysis should include information relative to the entire market, not just the units sold to a handful of purchasers representing just a fraction of the market. There is insufficient evidence of commercial success where there is no indication that the number of units represents a substantial quantity in the market. *Huang* at 140. Moshe Begim, the CEO and co-owner of AVC, estimates that Winterborne's U.S. market share is less than 5%. Begim Decl., ¶ 5 (Lauson Decl., Ex. K).

Second, Winterborne does not adequately define the market in the analysis of the revenues, both from sales and licensing. Winterborne describes how its own manufacturing has move completely from plastic clamshell packaging to corrugated cardboard blister packaging. Yet, Winterborne fails to compare these revenue numbers to the packaging market as a whole (which could include competing products, such as plastic clamshell packages, blister cards, and

1  paperboard and cardboard trapped blister display packs). Thus it is unknown if the
2  $20 million figure is substantial relative to the entire market, whatever that may
3  be. *Cable Elect. Prods. Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1026-27 (Fed. Cir.
4  1985)(overruled on other grounds).

5        Third, it is not known why Costco and Sam's Club chose Winterborne's
6  corrugated cardboard display package. Winterborne states that "[w]arehouse style
7  stores typically display trapped blister display packs, including those of the
8  present invention." Nazari Decl., ¶ 8 (Lauson Decl., Ex. G). This means that
9  warehouse stores also carry competitor's corrugated cardboard display package,
10 much like the ones disclosed in the Ritter Patent. Thus, these warehouse stores
11 may have made purchases for display packages even if there were no crushed
12 edge, so long as the cardboard sheets were adequately glued for security. The
13 inventor's opinion as to the purchaser's reasons for buying the product is
14 irrelevant. *Huang* at 135.

15       "If commercial success is due to an element in the prior art, no nexus
16 exists." *Tokai Corp.* at 1369. "[I]f the feature that creates the commercial success
17 was known in the prior art, the success is not pertinent." *Ormco Corp. v. Align*
18 *Technology, Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006). Thus, if the Costco and
19 Sam's Club purchased corrugated cardboard display packages due to features
20 already taught in Ritter Patent, then there is no nexus between the claimed crushed
21 peripheral edge and the commercial success.

22       The Patent Owner's commercial success arguments and evidence are
23 unpersuasive and lack any of the required real proof that the improvement of
24 crushing the edges is the cause of substantial commercial success.  These
25 collective defects should prevent Winterborne's commercial success evidence
26 from being considered, or such evidence being deemed very weak.

27            **2.  Winterborne is Unable to Prove AVC Copied Its Product.**
28       In the reexamination of the '480 and '747 Patents, Winterborne stated that

1   AVC and others have copied the patented invention and provided photographs
2   showing the front and back view of various packages with creases near the
3   perimeter presumably indicating the edges were crushed. Nazari Decl., ¶ 25-28,
4   33 and Ex. E (Lauson Decl., Ex. G).  Nazari stated he examined the packages by
5   cutting them open, and "believe[s]" they meet all the limitations of the patents.
6   *Id.*, ¶ 25.  Nazari explains that in order to accomplish the compressed edges that a
7   special 25 ton, $165,000 press is required, indicating that a typical 2000-3000
8   pound press is inadequate. *Id.*, ¶ 15, 30.

9        Under Federal Circuit jurisprudence, not every competing product that
10  arguably falls within the scope of a patent is evidence of copying, because
11  otherwise every infringement suit would automatically confirm the
12  nonobviousness of the patent. *Wyers v. Master Lock Co.*, 616 F.3d 1231 (Fed. Cir.
13  2010); *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir.
14  2004). Copying as objective evidence of nonobviousness requires evidence of
15  effort to replicate a specific product. *Wyers*, at 1246; *Iron Grip Barbell*, at 1325.
16  The "factual determination as to what the exact reason for the copying was" is the
17  heart of the copying nexus. *Ecolochem Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361,
18  1380 (Fed. Cir. 2000).

19       Even if it could be argued that Defendants' products were covered by the
20  scope of the '746, '747 or '480 patent claims, this alone would not provide the
21  nexus required to accord substantial weight to the copying evidence. In fact, the
22  Audio Video Color Corp. ("AVC") strived to create a product that was not only
23  *not* a copy of Winterborne's product, but product that also did not infringe the
24  '480 Patent's claims. The '480 Patent issued on June 1, 2010, about two years
25  before the '746 and '747 Patents.  Moshe Begim, the CEO and co-owner of AVC,
26  became aware of the '480 Patent in about mid-2011. Begim Decl., ¶ 6 (Lauson
27  Decl., Ex. K). Mr. Begim measured the crush percentage of the existing products
28  and found the edges of AVC's packages were thicker than the 50% crush

1  minimum required to infringe the '480 claims. *Id.* The crush percentages were

2  thereafter measured and recorded to insure non-infringement. *Id.* There is no

3  evidence that during this period AVC copied the 50% crush rate of Winterborne's

4  product.

5      If an alleged copyist had attempted for a substantial length of time to design

6  a similar device, and had failed, then the copying of an invention may constitute

7  evidence that the invention was not an obvious one. *Akamai Technologies, Inc. v.*

8  *Cable & Wireless Internet Services, Inc.*, 344 F.3d 1186 (Fed. Cir. 2003)(citing

9  *Vandenberg v. Dairy Equip. Co.*, 740 F.2d 1560, 1567 (Fed. Cir. 1984)).

10  Winterborne has presented no evidence of AVC's failure which could bolster the

11  copying evidence. In fact, when AVC manufactured a thicker crushed edge, it was

12  easily achieved with a 25 year old that exerts a maximum pressure of 3000

13  pounds, nowhere close to the 25 tons Winterborne claims is required to make the

14  crushed edge. Begim Decl., ¶7. Without knowledge of Winterborne's

15  manufacturing techniques, AVC easily made a corrugated cardboard display

16  package with edges crushed to a thickness greater than 50%. Winterborne's

17  copying evidence fails to credibly establish any objective indicia of non-

18  obviousness.

19          **3.  The Ritter Patent And Others Satisfied the Long Felt Need**

20              **Before Winterborne's Product.**

21      In the reexamination of the '480 and '747 Patents, Winterborne argued that

22  there has been a long-felt need in the packaging industry "to find an acceptable

23  alternative to the use of all-plastic clamshell packaging. *Nazari Decl.*, ¶ 32

24  (Lauson Decl., Ex G).  To establish evidence of a long felt but unresolved need, a

25  patent owner must show that there was a persistent problem that was recognized

26  by those of ordinary skill in the art. *In re Gershon*, 372 F.2d 535, 539 (CCPA

27  1967). The problem must not have been solved previously by another, and the

28  claimed invention must, in fact, satisfy the long-felt need. *Newell Co. v. Kenney*

*Mfg. Co.*, 864 F.2d 757, 768 (Fed. Cir. 1988). The Ritter Patent solved the problems associated with plastic clamshell packaging before the invention of the '480, '747 and '748 Patents. Ritter discloses the corrugated cardboard display package with security features to insure the security of the product. The industry's long felt need was satisfied by the Ritter disclosure.

The length of need is also a factor to be analyzed in determining whether long-felt need is established. *Minton v. National Association of Securities Dealers, Inc.*, 226 F. Supp.2d 845, 881 (E.D. Tex. 2002), aff'd 336 F.3d 1373 (Fed. Cir. 2003). Winterborne provided no information regarding the length of the need. Lacking such basic information, long-felt need cannot be found to support non-obviousness.

### 4.   Winterborne's Professional Approval Evidence Lacks Any Connection To The Crushed Edges Improvement.

In the reexamination of the '480 and '747 Patents, Winterborne asserted that four awards it won were objective indicia of non-obviousness. *Nazari Decl.*, ¶ 34 (Lauson Decl. Ex. G). Photographs of the awards are provided and the basis of each is described generally. *Id.*, Ex. F.

Just like all forms of secondary evidence, evidence of professional approval or praise must be shown to have nexus to the claimed invention. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008). The reaction of experts in the field to the invention upon its initial public appearance has been given weight in determining patentability. *See* e.g., *Vulcan Engineering Co., Inc. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1373 (Fed. Cir. 2002), cert. denied, 123 S. Ct. 81 (2002). Most probative is evidence that experts initially expressed skepticism, surprise, or incomprehension upon learning of the invention and thereafter praised its value. *See United States v. Adams*, 383 U.S. 39 (1966).

In *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) evidence that a municipality was given an Innovation in American Government

23

award for its use of a patented system was rejected since the press coverage for the award lacked a nexus to the full scope of the claims. *Muniauction*, at 1328.

Much like in *Muniauction*, Winterborne's evidence is lacking. A detailed presentation is referenced for the 2006 award but not provided. The Case Study: Winterborne document from Package Design Magazine describes the patented package but makes zero reference to the crushed edge feature. *See*, Exhibit F, page 5 of 5. There is no evidence that any experts in the field expressed skepticism, surprise or incomprehension upon learning of Winterborne's invention. There is no detailed showing of professional approval linked to the unique feature of the invention that can be used to support non-obviousness.

**F.     Defendants Should be Awarded Reasonable Attorney's Fees**

"The court in exceptional cases may award reasonable attorney's fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.* 572 U.S. 1 (2014), slip opin. at pp. 7-8. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of circumstances." *Id.* at p. 8, citing *Fogerty v. Fantasy, Inc.* 510 U.S. 517, 534 (1994)("we explained that in determining whether to award fees under a similar provision in the Copyright Act, district courts should consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.")

A court may, under certain circumstances, include fees incurred in a related reexamination in a fee award made pursuant to 35 U.S.C. § 285. In *PPG Indus., Inc. v. Celanese Polymer Specialties Co., Inc.*, 840 F.2d 1565 (Fed. Cir. 1988), the

1  Federal Circuit reversed the district court's denial of fees from a related reissue
2  proceeding where it "virtually replaced the district court litigation." *Id.* at 1569.
3  Likewise, in *Minco, Inc. v. Combustion Eng'g, Inc.*, 903 F. Supp. 1204, 1226
4  (E.D. Tenn. 1995) *aff'd*, 95 F.3d 1109 (Fed. Cir. 1996), the court awarded
5  reexamination fees "because the Court finds that the re-examination proceedings
6  replaced the district court litigation for a period of time, and that the re-
7  examination proceedings were instituted to shorten or to 'possibly obviate the
8  need for a trial,'" and because "after re-examination, there was no need for this
9  Court to try the issue of infringement…"; *see also Howes v. Med. Components,*
10 *Inc.*, 761 F. Supp. 1193, 1198 (E.D. Pa. 1990)(fees incurred for reexamination
11 "were reasonably necessary to this litigation, especially considering how
12 important the two reexamination proceedings were to this litigation.")

13     The amount of an attorney fee award pursuant to 35 U.S.C. § 285 "is
14 assessed at the discretion of the district court." *Lam, Inc. v. Johns-Manville Corp.*,
15 718 F.2d 1056, 1068 (Fed. Cir. 1983)(citations omitted). "In determining the
16 reasonableness of the award, there must be some evidence to support the
17 reasonableness of, inter alia, the billing rate charged and the number of hours
18 expended. *Id.* (holding sufficient the submission of hourly time records along with
19 documentation in support of the billing rates, even though the attorneys failed to
20 organize the time records in a manner that would allow the district court to review
21 the reasonableness of the hours expended)(citations omitted). "Section 285's
22 requirement that the fees awarded be 'reasonable' is a safeguard against excessive
23 reimbursement. *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988). "Where, as
24 here, a prevailing party 'has obtained excellent results, his attorney should recover
25 a fully compensatory fee. Normally this will encompass all hours reasonably
26 expended on the litigation…'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424,
27 435 (1983)). District courts may rely on surveys of billing for patent litigation in
28 determining the reasonableness of rates charged. *Id.* at 755-56.

1   Plaintiff began the lawsuit by suing not the known manufacturer AVC but
2   rather only AVC's customers, in an apparent attempt to interfere in AVC's
3   relationships with its customers and not give AVC the opportunity to defend the
4   case. Settlement discussions were occurring before and after the case was filed,
5   and soon thereafter AVC sent an email to Plaintiff's counsel informing him of the
6   Loheed prior art reference which showed the crushed edges for making joints in
7   packages, not considered by the Examiner. Lauson Decl., Ex. P. Plaintiff contends
8   this was non-analogous prior art, which as can be seen in these motion papers is a
9   very weak argument. Then in the reexaminations Plaintiff attempted to introduce
10  new claims with new limitations about the glue being water soluble, insignificant
11  and not mentioned in the patent specification. Moreover, the new claims and
12  declaration were untimely and rejected as such. *Id.*, Exs. Q, p. 5; Ex. R, p. 5.
13  Plaintiff's arguments that the Ritter and Loheed references should not be
14  combined were similarly weak and rejected by the PTO and presumably this
15  Court.

16  Defendants' attorney's fees to date in litigating this case including the
17  reexaminations at the PTO total over $110,000. Lauson Decl., para. 19. Ex S.
18  AVC who was later added as a party and is defending the case and indemnifying
19  its customers, requests an award of $110,000 in attorney's fees or some portion of
20  that amount. AVC will submit a further declaration and documents to prove its
21  attorney's fee expenditures upon request by this Court. Plaintiff's motivations in
22  first suing only the customers, continuing the case even after the disabling prior
23  art was found, and presenting frivolous arguments against Defendants' invalidity
24  contentions, warrant an order that at least some substantial portion of AVC's
25  defense costs should be reimbursed. The reexaminations largely replaced the
26  litigation and Defendants' attorneys obtained excellent results.

27
28

with its customers and not give AVC the opportunity to defend the case.  Settlement
discussions were occurring before and after the case was filed, and soon thereafter
AVC sent an email to Plaintiff's counsel informing him of the Loheed prior art
reference which showed the crushed edges for making joints in packages, not
considered by the Examiner. Lauson Decl., Ex. P.  Plaintiff contends this was non-
analogous prior art, which as can be seen in these motion papers is a very weak
argument.  Then in the reexaminations Plaintiff attempted to introduce new claims
with new limitations about the glue being water soluble, insignificant and not
mentioned in the patent specification.  Moreover, the new claims and declaration
were untimely and rejected as such. Id., Exs. Q, p. 5; Ex. R, p. 5.  Plaintiff's
arguments that the Ritter and Loheed references should not be combined were
similarly weak and rejected by the PTO and presumably this Court.

Defendants' attorney's fees to date in litigating this case including the
reexaminations at the PTO total over $110,000. Lauson Decl., para. 19. Ex S.  AVC
who was later added as a party and is defending the case and indemnifying its
customers, requests an award of $110,000 in attorney's fees or some portion of that
amount.  AVC will submit a further declaration and documents to prove its attorney's
fee expenditures upon request by this Court.  Plaintiff's motivations in first suing
only the customers, continuing the case even after the disabling prior art was found,
and presenting frivolous arguments against Defendants' invalidity contentions,
warrant an order that at least some substantial portion of AVC's defense costs should
be reimbursed.  The reexaminations largely replaced the litigation and Defendants'
attorneys obtained excellent results.

Respectfully submitted,

LAUSON & TARVER LLP

Dated: June 1 , 2015                    By: _____

Robert J. Lauson, Esq.

25